IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-00880-FL

**Talmadge Chaney,**

        Plaintiff,

v.

**Frank J. Bisignano,** Commissioner of Social Security,[2]

        Defendant.

**Amended
Memorandum & Recommendation**[1]

      Plaintiff Talmadge Chaney challenges an Administrative Law Judge's decision to deny his application for social security income. Chaney claims that the ALJ made two errors in reaching that determination. First, the ALJ failed to properly evaluate the medical opinion evidence. And second, she erred in evaluating Chaney's conditions under the Listing of Impairments. Both Chaney and Defendant Frank Bisignano, Commissioner of Social Security, seek a decision in their favor. D.E. 16, 18.

      After reviewing the parties' arguments, the undersigned has determined that the ALJ erred in her determination. The ALJ failed to evaluate medical opinions from providers at the Veterans Administration (VA). And while she referenced the criteria of Listing 4.02, the ALJ did not examine it against the evidence. So the undersigned cannot conclude that substantial evidence supports the step three finding. The undersigned thus recommends that the court grant Chaney

---

[1] The Amended Memorandum & Recommendation replaces the prior Memorandum & Recommendation (D.E. 20), which is vacated. This Amended Memorandum and Recommendation corrects the language in subsection III to align with the analysis.

[2] The court substitutes Frank J. Bisignano for the former defendants. *See* Fed. R. Civ. P 25(d).

relief, deny Bisignano relief, and remand the matter to the Commissioner for further consideration.[3]

I. Background

   A. Factual[4]

Chaney suffered a heart attack in November 2019 and spent a week in the hospital. Tr. at 1737. Providers placed three stents in his left anterior descending artery. Tr. at 1556–57. Records reflect an ejection fraction of 25 percent. *Id.* Providers categorized his heart condition as class II or class III under the New York Heart Association's functional classification. Tr. at 1871, 1884, 1928, 2022–23.

Chaney participated in cardiac rehabilitation over the next six months. Tr. at 1738–79. But he achieved no more than 3.8 METs[5] when exercising. *Id.*

Despite cardiac therapy, a February 2020 echocardiogram showed an ejection fraction of only 30 percent. Tr. at 1909. Providers assessed ischemic cardiomyopathy and chronic systolic congestive heart failure. *Id.*

The next month, Chaney received an implanted cardioverter defibrillator. Tr. at 1928. A month later, he could not attain more than 4 METs when exercising. Tr. at 1778, 2130. Providers cautioned Chaney to keep his target heart rate within the prescribed limit. Tr. at 2129.

---

[3] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

[4] Chaney focuses his arguments on his physical impairments, so the undersigned will limit the recapitulation of the medical evidence to those conditions and symptoms.

[5] Metabolic Equivalency of Task

At a follow-up visit nine months after his heart attack, Chaney complained of weakness. Tr. at 2113. And two months later, he reported chest pain with activity, which resolved after resting for ten minutes. Tr. at 2103.

Providers assessed systolic/diastolic congestive heart failure with NYHA class III in December 2020. Tr. at 2022–23. Eighteen months later, an echocardiogram revealed a left ventricular ejection fraction of 24 percent. Tr. at 4472.

State agency physicians concluded that Chaney could perform light work with postural and environmental restrictions. Tr. at 4076–77. State agency psychological reviewers determined that had no severe mental impairments. Tr. at 4077. They found mild limitations in his ability to maintain concentration, persistence, or pace and adapting or managing himself but no limitations in interacting with others or understanding, remembering, or applying information. *Id.*

Chaney testified at the 2021 hearing that he had trouble standing more than 15 minutes, lifting more than 25 pounds, or walking over 50 yards. Tr. at 4074. At the 2023 hearing, Chaney stated since his heart attack, he continued to experience weakness, fatigue, and shortness of breath. *Id.* He could sit or stand for 20 minutes and became winded if he walked more than 20 feet. *Id.* Chaney also said he was easily agitated because of his PTSD. *Id.*

**B.     Procedural**

In February 2020, Chaney filed for disability benefits alleging a disability that began three months earlier. Tr. at 15. After the Social Security Administration denied his claim at the initial level and upon reconsideration, Chaney appeared for a telephonic hearing before an ALJ to determine whether he was entitled to benefits. The ALJ denied his application and the Appeals Council denied review. Tr. 5, 27. After seeking review in this forum, the court remanded the matter. *See* Order, D.E. 29, *Chaney* v. *Kijakazi*, No. 7:22-CV-20-RJ, (E.D.N.C. Mar. 17, 2023).

3

Chaney appeared for a second telephonic hearing before the ALJ who determined Chaney had no right to benefits because he was not disabled. Tr. at 4067–79

The ALJ found that Chaney lived with several severe impairments. Tr. at 4070. These included coronary artery disease with a history of non-segment elevation myocardial infarction (NSTEMI), history of New York Heart Association (NYHA) Class II chronic heart failure, history of traumatic brain injury (TBI), seizure disorder, diabetes mellitus, obstructive sleep apnea (OSA), obesity, post traumatic stress disorder (PTSD), and depressive disorder. *Id.* The ALJ also found that Chaney's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.*

Next, the ALJ determined that Chaney had the residual functional capacity (RFC) to perform a sedentary work with limitations. Tr. at 4073. He can frequently climb ramps and occasionally climb stairs, but cannot climb ladders, ropes, or scaffolds. *Id.* Chaney can frequently balance, stoop, and kneel and occasionally crouch and crawl. *Id.* And he must avoid concentrated exposure to pulmonary irritants, temperature extremes, and workplace hazards. *Id.*

Chaney can understand, remember, and carry out instructions for simple, routine tasks not subject to specific production requirements, such as assembly line work. *Id.* He can maintain concentration, persistence, and pace for two-hour segments for the completion of such tasks (assuming normal breaks). *Id.* Chaney can frequently interact with supervisors and occasionally interact with coworkers and the public. *Id.* And he can adapt to workplace changes involving simple, work-related decisions. *Id.*

The ALJ then determined that Chaney could not perform his past work as a pipe layer. Tr. at 4078. But considering his age, education, work experience, and RFC, the ALJ found that other jobs existed in significant numbers in the national economy that Chaney could perform. Tr. at

4078–79. These included document preparer, printed circuit board screener, and final inspector. *Id.* These findings led the ALJ to conclude that Chaney was not disabled. Tr. at 4079.

After unsuccessfully seeking review by the Appeals Council, Chaney commenced this action in September 2024. D.E. 1. Both parties seek the court to issue a decision in their favor. D.E. 16, 18.

## II. Analysis

Chaney argues that the ALJ erred in evaluating the medical opinions. The ALJ failed to address three medical opinions that were part of his VA disability determination. Although an ALJ need not consider another agency's disability conclusion, she still must evaluate the underlying evidence. Having failed to address these medical opinions, it is unclear whether the ALJ overlooked this evidence or discounted them, and why. So this issue creates grounds to remand.

Chaney's also contends that the ALJ erred in failing to find that he met or equaled Listing 4.02. The ALJ referenced this Listing and its criteria but concluded that Chaney did not satisfy it. Yet she failed to compare the evidence to the Listing's elements. So the basis for her conclusion at step three is not apparent. This error limits the ability to conduct a meaningful review of that finding. So this argument, too, warrants further consideration.

The district court should thus grant Chaney relief and remand the matter to the Commissioner.

### A. Standard for Review of the Commissioner's Final Decision

When a claimant appeals the Commissioner's final decision, the district court considers whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

  B. **Standard for Evaluating Disability**

Under the Social Security Act, a claimant is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step, sequential process when considering disability claims. 20 C.F.R. § 404.1520.

First, at step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claim is denied. *Id.*

Then, at step two, the ALJ looks at whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If not, the claim is denied. *Id.*

Next, at step three, the ALJ compares the claimant's impairments to those in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If the impairment appears in the Listing or if it is equal to a listed impairment, the ALJ must find that the claimant is disabled. *Id.*

But if the ALJ concludes that a presumption of disability is unwarranted, the ALJ must then assess the claimant's residual functional capacity ("RFC"). A claimant's RFC "is the most work-related activity the claimant can do despite all of her medically determinable impairments and the limitations they cause." *Arakas* v. *Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 90 (4th Cir. 2020). Determining the RFC requires the ALJ to "first identify the claimant's 'functional

6

limitations or restrictions' and assess the claimant's 'ability to do sustained work-related' activities 'on a regular and continuing basis'—i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The ALJ will then "express the claimant's Residual Functional Capacity 'in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy.'" *Id.* (alteration in original).

After assessing the claimant's RFC, the ALJ, at step four, considers whether the claimant can perform his past work despite his impairments. *Id.* § 404.1520(a)(4)(iv). If the claimant can, the ALJ will deny the claim. *Id.* If the claimant cannot, the analysis moves on to step five.

This final step considers whether the claimant, based on his age, work experience, and RFC, can perform other substantial gainful work. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if so, they are considered disabled. *Id.*

The burden of proof shifts between the Commissioner and the claimant during the evaluation process. The claimant has the burden of proof on the first four steps, but the Commissioner bears it on the last one. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Opinion Evidence

Chaney contends that the ALJ failed to properly consider three medical opinions from the Veterans Administration. The Commissioner maintains that these documents are not medical opinion but VA disability ratings, which an ALJ has no obligation to consider. The undersigned finds that the ALJ was required to consider and explain her assessment of this evidence.

The Regulations direct the ALJ to consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .

7

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1520(a)(2), 416.913(a)(2).

The Regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors:

(1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion."

*Id*. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain their consideration of the other factors but need only do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *Id.*

The Regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* §§ 404.1520c(b), 416.920c(b). But when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Chaney references three medical opinions, all of which were created by the VA as part of Compensation & Pension (C&P) examinations to rate his service-connected disabilities. He claims that the ALJ's failure to evaluate this evidence, which supports his claims, requires remand.

First, Dr. Linda Oldman Ikle evaluated the residual effects of his TBI in 2012. Tr. at 3476. She concluded that Chaney had significant problems with his memory and verbal intelligence, which would limit his ability to understand complex verbal instructions. Tr. at 3483. So verbal information had to be kept simple for him. *Id.*

Second, Dr. Jeremy Revell assessed this condition about three years later. Tr. at 3490. He noted Chaney's violent thoughts, impulsivity, and irritability. Tr. at 3496. Dr. Ravell found that Chaney would have difficulty interacting and adapting. Tr. at 3504.

9

Third, Dr. Andre Sarmiento evaluated Chaney's migraine headaches around this time. Tr. at 3570. His symptoms include nausea, sensory changes, and sensitivity to light and sound. Tr. at 3570–71. Chaney experienced migraines occurring more than once a month and lasting for two days. Tr. at 3571. He could not perform tasks when they occurred. Tr. at 3572.[6]

The Commissioner argues that the ALJ has no obligation to articulate the persuasive values of this evidence because they are not medical opinions. Bisignano maintains that the Regulations do not require an ALJ to analyze or discuss "VA disability-relating evidence." D.E. 18 at 11. He also contends that this evidence falls outside the relevant period, with no indication they relate to it. *Id.* at 12–13. The Commissioner appears to suggest that the age of the evidence relieves the ALJ of an obligation to consider it.

The undersigned finds no merit to the Defendant's arguments. The 2017 revisions to the Regulations changed how the Agency assesses medical opinions and other governmental agencies' disability determinations. As the ALJ noted, she no longer must provide an analysis of VA disability ratings. Tr. at 4077. Yet the ALJ still must consider the evidence underlying another agency's decision. *See* 20 C.F.R. §§ 404.1504, 404.1520c(a).

The Commission's argument fails because he conflates VA disability ratings with the evidence underlying them. While the ALJ need not analyze VA disability ratings, the medical opinions supporting those evaluations remain relevant evidence that an ALJ must consider. *See Bill Branch Coal Corp.* v. *Sparks*, 213 F.3d 186, 190 (4th Cir. 2000). To the extent the ALJ may find this evidence unpersuasive, she must "provide a sufficient explanation" as to why. *Id*; *see John S.* v. *O'Malley*, No. 1:23-CV-216, 2024 WL 4348972, at *6 (M.D.N.C. Sept. 30, 2024) (observing that although the current regulations did not require the ALJ to evaluate the VA

---

[6] At both hearing, testimony from the Vocational Experts concluded that more than one absence a month would preclude competitive employment. Tr. at 64–65, 4106.

decision itself, the underlying medical evidence, "including medical opinion evidence, remains relevant under 20 C.F.R. § 404.1504 and must be considered.") (citing 20 C.F.R. § 404.1513(a)(1)-(4)).

A review of Drs. Ilke, Ravell, and Sarmiento's assessments leaves no doubt that they are properly classified as medical opinions. They are statements from medical sources about Chaney's limitations with understanding complex verbal instructions, interacting with others, adapting to changes, and performing tasks. And the fact that Drs. Ilke, Ravell, and Sarmiento's opinions provided support for Chaney's VA disability determinations does not discharge the ALJ's obligation to evaluate them.

The Commissioner also challenges these opinions because they predate the alleged disability onset date by several years. This argument, though, is unavailing. "Where evidence predating the alleged date of disability is made part of the record, the regulations require the Commissioner to consider that evidence." *Cotton* v. *Colvin*, No. 5:14-CV-425-FL, 2015 WL 5714912, at *3 (E.D.N.C. Sept. 29, 2015) (citing 20 C.F.R. § 404.1520(a)(3)); *see Dugan* v. *Bisignano*, No. 7:24-CV-663-M-BM, 2025 WL 2630228, at *7 (E.D.N.C. Aug. 28, 2025) (finding that a substantial evidence determination could not be made where the ALJ did not discuss VA records from several years before alleged onset date which were part of the record, supported claimant's subjective allegations, and conflicted with the ALJ's conclusions), *adopted by* 2025 WL 2627683 (E.D.N.C. Sept. 11, 2025); *Hatley* v. *O'Malley*, No. 5:23-CV-16-KS, 2024 WL 166002, at *4 (E.D.N.C. Jan. 16, 2024) ("That some of this evidence pre-dates the period at issue does not necessarily make it irrelevant.").

Although it may influence their persuasive values, the temporal remoteness of these three medical opinions from the alleged disability onset date provides no basis to disregard them. They still must be considered, which the ALJ failed to do.

In sum, the ALJ erred by failing to consider the medical opinions of Drs. Ilke, Ravell, and Sarmiento. The undersigned thus finds that Chaney has offered a meritorious argument on this issue. So the court should grant Chaney relief and remand for further consideration of this issue.

### D. Step Three

Chaney next contends that the ALJ erred by finding that his impairments did not meet or medically equal the requirements of Listing 4.02 (chronic heart failure). The Commissioner maintains that the evidentiary record supports the ALJ's finding. The undersigned finds that the ALJ erred in making her step three determination.

#### 1. Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan* v. *Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen* v. *Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

12

The claimant has the burden of proving that his or her impairments meet or medically equal a listed impairment. *Hall* v. *Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock* v. *Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, cannot establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d); *see also Mecimore* v. *Astrue*, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ need not explicitly identify and discuss every possible listing that may apply to a particular claimant. But the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). When the evidence exists but is rejected without discussion, the "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, perhaps even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador* v. *Colvin*, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith* v. *Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Still, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id*.

## 2. Listing 4.02

At step three, the ALJ found that Chaney's impairments did not meet or medically equal Listing 4.02. Tr. at 4070. In considering this Listing, however, she only recited the elements, and did not analyze them against the evidence. *Id*.

Listing 4.02 deals with congestive heart failure. First, a claimant must show medical documentation of:

1. Systolic failure, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure).

20 C.F.R., Part 404, Subpt. P, Appx. 1, § 4.02A (internal citations omitted). Then a claimant must also show that either of these results in:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom [a medical consultant] . . . has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization; or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

    a. Dyspnea, fatigue, palpitations, or chest discomfort; or

> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction, despite an increase in workload; or
> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

*Id.* § 4.02B (internal citations omitted).[7]

### 3. Application

Chaney argues that the ALJ erred in failing to conduct a meaningful analysis of his impairments under Listing 4.02. The Commissioner contends that Chaney cannot meet the criteria of subparagraph B. The undersigned finds that the ALJ's lack of analysis in examining Listing 4.02 requires further consideration on remand.

#### a. Subparagraph A – Systolic Failure

Chaney contends that the evidence shows an ejection fraction 30 percent or less during a period of stability. In February 2020, an echocardiogram measured his ejection fraction at 30 percent. Tr. at 1909. And two years later, his ejection fraction was 24 percent. Tr. at 4472.

Bisignano does not challenge the evidence that Chaney satisfies the criteria of subparagraph A. D.E. 18 at 9. So the undersigned concludes that Chaney has established this factor of Listing 4.02.

---

[7] Chaney does not argue that he meets the second prong of § 4.02A. Nor does he appear to suggest that his conditions satisfy any part of § 4.02B, aside from § 4.02(b)(a)(3). So the undersigned does not consider those other criteria.

### b. Subparagraph B Criteria

To support this element, Chaney notes that providers have cautioned him to stay within proscribed exercise limits and not exceed his targeted heart rate during cardiac rehabilitation. Tr. at 1743, 1760, 2129. Records show that he achieved no more than 3.8 METs in cardiac rehabilitation. Tr. at 1738–50, 1757, 1766, 1772, 1778, 2127–33. And Chaney reported feeling weak and experienced pressure in his chest with activity, which resolved after about 10 minutes of rest. Tr. at 2103, 2113.

Bisignano contends that the record fails to show that Chaney could not perform an exercise tolerance test because of dyspnea, fatigue, palpitations, or chest discomfort. Although he may have experienced fatigue and chest discomfort, the evidence does not show that these symptoms prevented him from achieving 5 METs when exercising. It thus remains possible that another reason factored into an inability to attain 5 METs when exercising.

The record reflects several entries that address Listing 4.02B factors. Cardiac rehabilitation records did not access Chaney's dyspnea. Tr. at 1738–79. But they show that he reported pain, rated three out of five, when exercising. Tr. at 1750. At a follow-up visit nine months after his heart attack, Chaney reported dyspnea and fatigue with undemanding tasks. Tr. at 2113. And in October 2020, he told providers that he experienced weakness, fatigued easily, and had chest discomfort. Tr. at 2103.

The Commissioner is correct that "the responsibility for deciding whether an impairment meets or equals a listed impairment is reserved exclusively to the ALJ[.]" D.E. 18 at 10. To meet this duty, the ALJ must evaluate the evidence in the record against the Listing's criteria. Here, the ALJ did not do so.

To permit meaningful judicial review, an ALJ must explain her material findings with citations to the record. *See Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Mascio*, 780 F.3d at 636 (noting inadequacies in the ALJ's analysis frustrated meaningful review); *Radford*, 734 F.3d at 295 (ALJ's step three analysis stating that claimant did not meet or medically equal listing, without a comparison of the listing criteria to the specific facts of case, insufficient because it made reviewing court's substantial evidence evaluation impossible). At step three, an ALJ must detail the evidence supporting her finding. A lack of explanation why a condition fails to satisfy a Listing impairment may frustrate meaningful judicial review when the record contains evidence of symptoms that might match some or all the criteria of a listed impairment.

The evidence supporting the subparagraph B's criteria is uncertain. Yet there is some indication that Chaney's conditions may satisfy its criteria as the record contains evidence that arguably illustrates the elements of this Listing. In reciting the criteria and summarily concluding that his impairments did not satisfy them, the ALJ offered no indication or explanation of how the evidence fell short of Listing 4.02. This error forms a basis for remand.

Finding merit to Chaney's argument, the undersigned recommends that the court grant him relief on this claim.

## III. Conclusion

For these reasons, the undersigned recommends that the court grant Chaney's request for relief (D.E. 16), deny Bisignano's request for relief (D.E. 18), and remand this matter to the Commissioner for further consideration.[8]

The Clerk of Court must serve a copy of this Memorandum and Recommendation (M&R) on each party who has appeared in this action. Any party may file a written objection to the M&R

---

[8] The district court may consider an instruction that a different ALJ further consider Chaney's application given the previous remand and the previous directive to examine Listing 4.02.

17

Case 7:24-cv-00880-FL-RN    Document 21    Filed 10/29/25    Page 17 of 18

within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: October 29, 2025.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE